**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| MONTENEQUE NAKIA KNOX,<br><br>     Plaintiff<br><br>v.<br><br>C. SHARP, et. al.,<br><br>     Defendants | Case No.: 3:17-cv-00535-MMD-WGC<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF No. 67 |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Defendants' Motion for Summary Judgment. (ECF Nos. 67, 67-1 to 67-20.)[1] Plaintiff filed a response. (ECF No. 72.) Defendants filed a reply. (ECF No. 75.) Plaintiff then filed a second response (ECF No. 76) and affidavit (ECF No. 77). He subsequently

---

[1] Along with their motion for summary judgment, Defendants filed a motion for leave to file exhibits, containing Plaintiff's mental health records, *in camera*. Citing legal authority for *sealing* records, Defendants argue that the records should be filed *in camera* because the records contain sensitive information that may detrimentally affect Plaintiff's mental health condition, without a declaration or other evidence to support their position. They also argue that the documents should be filed in camera to protect their confidentiality and to protect institutional safety and security. Without elaborating, they assert that certain information released into the prison has the dangerous potential to expose Plaintiff or staff members to physical, emotional, financial or other harm. (ECF No. 68.) The court has concurrently issued an order denying the motion because Defendants did not actually submit the records to the court *in camera*; and importantly, because they do not set forth a proper legal basis for filing the records *in camera* with the court, and not under seal, and they do not assert a sufficient legal basis for not serving Plaintiff with the records and allowing him to review these records in connection with responding to a dispositive motion. Therefore, the court has not considered the records in making its recommendation on the motion for summary judgment, and also finds that they are not necessary to determine the motion, as they only peripherally relate to Defendants' argument that Plaintiff's allegations stem from his mental illness.

filed a third response to the motion. (ECF No. 78.) Local Rule 7-2 contemplates the filing of a motion, response, and reply brief. Sur-replies (a response to a reply brief) are not permitted without leave of court, and are discouraged. LR 7-2(b). Plaintiff filed a response, and then two sur-replies without leave of court. Defendants did not object or move to strike the sur-replies. On this occasion only, the court exercised its discretion to review the sur-replies, but they, like his initial response, do not contain any argument or evidence to refute the evidence in Defendants' motion.

After a thorough review, it is recommended that Defendants' motion be granted.

## I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Am. Compl., ECF No. 13.) The events giving rise to this action took place while Plaintiff was housed at High Desert State Prison (HDSP) and Ely State Prison (ESP). (*Id.*)

On screening, Plaintiff was allowed to proceed with the following claims: (1) a retaliation claim against defendants Sharp, Rowley, Van Hassel, Sliker, Starns and Quinlan, based on allegations that Sharp, Rowley, Van Hassel, and Sliker swore "payback and random beatings" and blamed Plaintiff for the September 11 attacks and "what happened down there in [Los Angeles"] because of Plaintiff's Islamic faith, and that Starns and Quinlan used racial epithets and gave Plaintiff a "false ticket" for assault and battery based on Plaintiff's belief in Islam; (2) an Eighth Amendment deliberate indifference to safety claim against Sharp, Quinlan and Sliker, based on allegations that they labeled him a snitch and child molester in the presence of inmates on the tier; (3) an Eighth Amendment failure to protect claim against defendants Johnson and Miro based on allegations that they labeled Plaintiff a snitch and child molester and then

suggested that inmates attack Plaintiff, and he was then assaulted by three inmates; (4) a conspiracy to violate constitutional rights claim against Johnson and Miro based on allegations that they conspired to incite other inmates to attack Plaintiff; and (5) a Fourteenth Amendment equal protection claim against Quinlan, Starns, Sharp, Rowley, Van Hassel, and Sliker, based on allegations that they singled out Plaintiff for disparate treatment because of his Islamic faith.

Therefore, Plaintiff was allowed to proceed against Johnson, Miro, Quinlan, Rowley, Sharp, Sliker, Starns, and Van Hassel.

The Attorney General's Office accepted service on behalf of Teddy Miro, Thomas Quinlan, Christian Rowley, Kerry Sliker, and Andrew Van Hassel. Service was not accepted for defendant Aaron Starnes, a former employee, and his address was filed under seal. Service was not accepted for defendant Johnson because the Attorney General's Office was unable to determine which individual Johnson employed by NDOC at HDSP might be the defendant Plaintiff was referencing. Finally, service was not accepted for Sharp, as there were two correctional officers, neither of whom had the first initial C. (ECF No. 46.) The court issued a summons for Starnes, (ECF No. 50), which was returned unexecuted (ECF No. 55). On August 7, 2019, District Judge Du dismissed C. Sharp and Aaron Starnes without prejudice under Federal Rule of Civil Procedure 4(m). (ECF No. 58.) District Judge Du also dismissed defendant Johnson under Rule 4(m) on November 13, 2019. (ECF No. 74.) Therefore, this action is only proceeding on the claims against defendants Miro, Quinlan, Rowley, Sliker, and Van Hassel.

These Defendants move for summary judgment, arguing: they did not retaliate against Plaintiff; many officers named in the complaint had no involvement/did not personally participate in the alleged constitutional violations; Defendants were not deliberately indifferent

3

to Plaintiff's safety; Defendants did not fail to protect Plaintiff; Plaintiff did not properly exhaust his administrative remedies; and they are entitled to qualified immunity.

## II. LEGAL STANDARD

The legal standard governing this motion is well settled: a party is entitled to summary judgment when "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Cartrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)). An issue is "genuine" if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). A fact is "material" if it could affect the outcome of the case. *Id*. at 248 (disputes over facts that might affect the outcome will preclude summary judgment, but factual disputes which are irrelevant or unnecessary are not considered). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *Anderson*, 477 U.S. at 250.

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted); *see also Celotex,* 477 U.S. at 323-24 (purpose of summary judgment is "to isolate and dispose of factually unsupported claims"); *Anderson,* 477 U.S. at 252 (purpose of summary judgment is to determine whether a case "is so one-sided that one party must prevail as a matter of law"). In considering a motion for summary judgment, all reasonable inferences are drawn in the light most favorable to the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citation omitted); *Kaiser Cement Corp. v. Fischbach & Moore Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986). That being said, "if the evidence of the nonmoving party "is not significantly probative, summary judgment may be granted." *Anderson,*

477 U.S. at 249-250 (citations omitted). The court's function is not to weigh the evidence and determine the truth or to make credibility determinations. *Celotex,* 477 U.S. at 249, 255; *Anderson*, 477 U.S. at 249.

In deciding a motion for summary judgment, the court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'… In such a case, the moving party has the initial burden of establishing the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rest., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party cannot establish an element essential to that party's case on which that party will have the burden of proof at trial. *See Celotex Corp. v. Cartrett*, 477 U.S. 317, 323-25 (1986).

If the moving party satisfies its initial burden, the burden shifts to the opposing party to establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The opposing party need not establish a genuine dispute of material fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation omitted). The nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *Matsushita*, 475 U.S. at 587. Instead, the opposition must go beyond the assertions and allegations of the

pleadings and set forth specific facts by producing competent evidence that shows a genuine dispute of material fact for trial. *Celotex*, 477 U.S. at 324.

### III. DISCUSSION

A. Retaliation

**1. September 11 Attacks - Rowley, Van Hassel, Sliker, and Quinlan**

Plaintiff alleges that Rowley, Van Hassel, Sliker, and Quinlan swore "payback and random beatings" and blamed Plaintiff for the September 11 attacks and "what happened down there in [Los Angeles"] because of Plaintiff's Islamic faith.

"Section 1983 provides a cause of action for prison inmates whose constitutionally protected activity has resulted in retaliatory action by prison officials." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Such a claim consists of five elements:

> (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal.

*Jones*, 791 F.3d at 1035 (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005))

Defendants acknowledge that Plaintiff filed a grievance on December 19, 2016, grievance 20063014657, which asserted at the informal level grievance that on December 19, Officer Sharp made a threat of retaliation against him because of the September 11 attacks and because Plaintiff is Muslim. (ECF No. 67-9 at 7.) In the first level grievance, he stated that Sharp carried out the threats almost every day of his shift from October 19 until January 3, 2016. (ECF No. 67-9.)

Plaintiff submitted another grievance, number 20063011509, and the informal level grievance stated that Plaintiff had been receiving threats from Officer Sharp about getting a

6

frivolous write up because Plaintiff told Sharp that he was writing Sharp up. (ECF No. 67-10 at 7.) In the second level grievance, he asserted that on December 16, 2015, Sharp made verbal threats of random beatings and payback for the September 11 attacks. (*Id*. at 5.)

Sharp has been dismissed as a defendant, and these grievances contain no evidence that the other Defendants retaliated against Plaintiff. The court will now address the arguments with respect to the remaining defendants and the retaliation claims.

**a. Quinlan**

Defendants acknowledge that Plaintiff filed a grievance on October 28, 2015, number 20063011745, asserting that Quinlan made threats toward Plaintiff. In the grievance, Plaintiff stated that Quinlan is one of the officers that had been showing deliberate indifference toward him, and "I'm quite sure any other [Muslim] that he encounters." He asserted that all of the threats were because Plaintiff is Muslim and from Los Angeles. (ECF No. 67-4 at 5-6.) The second level grievance states that on October 27 and 28, Quinlan threatened him with retaliation for the September 11 attacks. (ECF No. 67-4 at 2.)

Quinlan denies these allegations, stating that he never threatened Plaintiff in any way; he was unaware Plaintiff was Muslim or from Los Angeles; and never threatened him with payback for September 11th. (Quinlan Decl., ECF No. 67-15 at 2.)

Plaintiff presents no evidence to refute Quinlan's statement that Quinlan did not retaliate against Plaintiff because he was Muslim or because of the September 11th attacks, or because of anything related to Plaintiff being from Los Angeles. In fact, Plaintiff's responses do not mention Quinlan or the retaliation claim against him.

The grievance submitted by Plaintiff about Quinlan provides no factual details about what Plaintiff claims Quinlan did. In other words, there is no evidence of how Plaintiff claims

7

Quinlan threatened him, or that Quinlan otherwise took any adverse action against Plaintiff. Nor is there evidence that any action was taken against Plaintiff because he is Muslim.

Therefore, summary judgment should be granted in Quinlan's favor on this claim.

**b. Van Hassel**

Van Hassel states in his declaration that was not employed by NDOC when the alleged instance of retaliation occurred; he does not believe he ever met Plaintiff; and he never threatened Plaintiff and was unaware he was Muslim or from Los Angeles. (Van Hassel Decl., ECF No. 67-11.)

Plaintiff presents no evidence in response to Van Hassel's declaration and does not address Van Hassel in his responses. Therefore, he fails to present a genuine dispute of material fact as to the retaliation claim against Van Hassel, and summary judgment should be granted in Van Hassel's favor.

**c. Rowley**

Defendants state that two individuals with the last name Rowley have been referenced in this case. Colton Rowley began working for NDOC in January 2018. (Colton Rowley Decl., ECF No. 67-12.) He has never crossed paths with Plaintiff. (*Id.*) Plaintiff has been housed at HDSP since Colton Rowley's employment.

Christian Rowley was employed by NDOC during the relevant time, and was assigned to the Correctional Emergency Response Team. (Christian Rowley Decl., ECF No. 67-13). He has no recollection of Plaintiff, and did not witness any of the allegations mentioned. (*Id*.) Plaintiff was housed in Unit 2-A-22-B from October 19, 2015, until March 11, 2016. (ECF No. 67-2 at 5.) Rowley was not assigned to be in proximity to Plaintiff during the time of the alleged violation. (Christian Rowley Decl., ECF No. 67-13.)

Plaintiff does not address Colton Rowley's or Christian Rowley's argument or declarations in his responses, and has not presented a genuine dispute of material fact with respect to the retaliation claim against Colton or Christian Rowley. Therefore, summary judgment should be granted in favor of defendant Christian Rowley (the only Rowley to be served and appear in this action).

### d. Sliker

Sliker denies that these events took place; has no knowledge of the claims and did not witness them; and never threatened Plaintiff with payback for September 11 or for anything related to Los Angeles. (Sliker Decl., ECF No. 67-14.)

Plaintiff's responses present no evidence or argument to refute Sliker's declaration that there was no involvement in the alleged constitutional violations. Therefore, summary judgment should be granted in Sliker's favor.

### 2. The Alleged False Assault and Battery Charge-Quinlan

Plaintiff also alleges that Quinlan used racial epithets and gave Plaintiff a false ticket for assault and battery based on Plaintiff's belief in Islam.

According to Defendants, Caseworker Southworth was working at his assigned post on May 20, 2016, when he heard a scuffle and muffled yelling coming from Plaintiff's cell. He saw Plaintiff throwing closed fist punches with both hands at his cellmate while his cellmate was on his back and covering his head and shouting "stop it." (ECF No. 67-1 at 2.) Plaintiff faced adverse administrative action, but it was not because of any protected conduct, but instead, because he violated safety and security rules to not engage in assaultive conduct. (AR 707, ECF No. 67-5.) They assert that the reporting of the fight and subsequent disciplinary hearing advanced a legitimate correctional goal of maintaining order and protecting Plaintiff's cellmate.

Plaintiff was found guilty of fighting. (ECF No. 67-6 at 2.) It was not a "false ticket." Moreover, Quinlan was not involved in the reporting of the incident, as he was not on the scene when this occurred. (ECF No. 67-1 at 2.)

Plaintiff presents no evidence or argument to refute that Quinlan was not involved in this alleged constitutional violation; therefore, summary judgment should be granted in Quinlan's favor with respect to this retaliation claim.

**B. Equal Protection - Quinlan, Rowley, Van Hassel, Sliker**

Plaintiff alleges that these same defendants, now limited to Quinlan, Rowley, Van Hassel, and Sliker, violated his right to equal protection of the laws when they singled him out for disparate treatment because of his Islamic faith.

The Fourteenth Amendment prohibits the denial of "the equal protection of the laws." U.S. Const. amend XIV, § 1. It "commands that no State shall deny to any person within its jurisdiction the equal protection of the laws, which is essentially a direction that all persons similarly situated should be treated alike." *Lee v. City of Los Angeles*, 250 F.3d 668, 686 (9th Cir. 2001) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)).

"To state a claim under 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Furnace*, 705 F.3d at 1030 (quoting *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998)).

Defendants assert the same arguments that they asserted with respect to the retaliation claims: Quinlan denies the events took place; Colton Rowley was never staffed at the same facility as Plaintiff; Christian Rowley was not assigned to Plaintiff's unit, and did not witness and

was not a part of any of the allegations; Van Hassel was not employed during the time period of the allegations; Sliker never witnessed or was a part of any of the alleged conduct.

Plaintiff presents no evidence or argument to refute these facts or present a genuine dispute of material fact that Defendants acted with an intent to discriminate against him because he is Muslim; therefore, summary judgment should be granted in favor of Quinlan, Rowley, Van Hassel and Sliker as to the equal protection claim.

**C. Eighth Amendment Deliberate Indifference to Safety - Quinlan and Sliker**

Plaintiff alleges that Quinlan and Sliker labeled him a snitch and child molester in the presence of other inmates.

Under the Eighth Amendment, prison conditions should not "involve the wanton and unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Although prison conditions may be, and often are, restrictive and harsh, prison officials "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)(quoting *Hudson v. Palmer*, 486 U.S. 517, 526-27 (1984)).

The inmate must establish that prison officials were "deliberately indifferent" to serious threats to an inmate's safety. *Farmer*, 511 U.S. 834. Under the deliberate indifference standard, a violation of the Eighth Amendment is only found when an objective and subjective component are met. First, "the deprivation alleged must be, objectively, sufficiently serious[.]" *Id.* (citations and quotation marks omitted). Second, the inmate must satisfy the subjective element, which means the prison official must "know of and disregard an excessive risk to inmate … safety; the

official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Defendants argue that there is no evidence that this occurred, and Quinlan and Sliker both deny these allegations. (Quinlan Decl., ECF No. 67-15; Sliker Decl., ECF No. 67-14.) They point out that this is the same allegation made against Johnson and Miro three years prior at ESP. Defendants also point out that Plaintiff did not include this allegation when he wrote a grievance about Quinlan, and instead alleged Quinlan was threatening him generally.

Plaintiff presents no evidence or argument in response to the declarations of Quinlan and Sliker to create a genuine dispute of material fact; therefore, summary judgment should be granted in their favor on the Eighth Amendment deliberate indifference to safety claim.

**D. Eighth Amendment Failure to Protect & Conspiracy - Miro**

Plaintiff alleges that Miro and Johnson (who has been dismissed) conspired to violate and did violate Plaintiff's rights when they labeled Plaintiff a snitch and child molester and suggested that inmates should attack Plaintiff, and he was subsequently assaulted by three inmates.

Again, prison officials must "take reasonable measures to guarantee the safety of the inmates." *Farmer*, 511 U.S. at 832 (citation and quotation marks omitted.) "[P]rison officials have a duty… to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (citations and quotations omitted). "Having incarcerated 'persons [with] demonstrated proclivity[ies] for antisocial criminal and often violent, conduct,' having stripped them of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer*, 511 U.S. at 833 (internal citations omitted). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (citation

omitted). The inmate must establish that the deprivation was objectively, sufficiently serious, and that the prison official knew of and disregarded a risk to Plaintiff's safety. *Id.* at 834, 837.

Officer Miro worked with Johnson at HDSP. Miro does not recall Plaintiff, and did not accuse him of being a snitch and child molester or conspire to have inmates do harm to Plaintiff. (Miro Decl., ECF No. 67-16.)

One of Plaintiff's responses argues that Johnson violated his rights when he said to get Plaintiff because Plaintiff was trying to "P.C. up" and  (referring to protective custody). (ECF Nos, 76, 77, 78.) Johnson has been dismissed; moreover, Plaintiff presents no evidence to connect Johnson's statement with Miro and provides no evidence to refute Miro's declaration that he did not call Plaintiff a snitch and child molester or conspire to have inmates do harm to Plaintiff. Nor is there any evidence that Plaintiff was attacked or injured by other inmates. Therefore, summary judgment should be granted in Miro's favor on the Eighth Amendment failure to protect and conspiracy claims.

**E. Conclusion**

Defendants have submitted evidence that demonstrates they are entitled to summary judgment, and Plaintiff has not submitted any evidence (or even argument) to create a genuine dispute of material fact as to any of the claims asserted against the remaining Defendants. Therefore, summary judgment should be granted in Defendants' favor. In light of this conclusion, the court need not reach Defendants' exhaustion or qualified immunity arguments.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **GRANTING** Defendants' Motion for Summary Judgment (ECF No. 67).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: June 5, 2020

                                                _____
                                                William G. Cobb
                                                United States Magistrate Judge